IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-0644-WJM-KMT

BRENDA SANDOVAL,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, a/k/a UNUM,

    Defendant.

---

**ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND GRANTING MOTION FOR STAY OF ENFORCEMENT OF JUDGMENT AND APPROVAL OF SUPERSEDEAS BOND**

---

Plaintiff Brenda Sandoval ("Sandoval") sued her insurance provider Defendant Unum Life Insurance Company of America ("Unum") for breach of contract after Unum terminated benefits that Sandoval received under a long-term disability policy (the "Policy").  On September 28, 2018, after a four-day jury trial, the jury returned a verdict against Unum and for Sandoval, finding that she proved by a preponderance of the evidence that Unum breached its contract, and awarded Sandoval $81,244.85 in damages.  (ECF No. 115.)  After the jury trial, the Court sought supplemental briefing from the parties on the appropriateness of injunctive and declaratory relief.  (ECF Nos. 118 & 122.)  On January 17, 2019, the Court entered judgment in favor of Sandoval.  (ECF No. 133.)  Within 28 days after the entry of judgment, Unum filed its Renewed Motion for Judgment as a Matter of Law under Rule 50(b) (the "Rule 50(b) Motion").  (ECF No. 137.)

Currently before the Court is Unum's Rule 50(b) Motion, as well as Unum's "Motion to Stay Enforcement of Judgment, Approval of Supersedeas Bond and Request for Expedited Briefing" (the "Motion to Stay") (ECF No. 147). For the following reasons, Unum's Rule 50(b) Motion is denied and Unum's Motion to Stay is granted.

## I. LEGAL STANDARD

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Stated another way, "[a] directed verdict is justified only where the proof is all one way or so overwhelmingly preponderant in favor of the movant so as to permit no other rational conclusion." *Hinds v. Gen. Motors Corp.*, 988 F.2d 1039, 1045 (10th Cir. 1993). In reviewing a Rule 50 motion, the Court must draw all reasonable inferences in favor of the nonmoving party. *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009).

Where a party properly moves for judgment as a matter of law prior to the case being submitted to the jury, that party may renew the motion after the jury returns its verdict. *See* Fed. R. Civ. P. 50(b); *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1147-48 (10th Cir. 1999). In resolving a Rule 50(b) motion, the Court "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000).

## II. ANALYSIS

As further background, on September 26, 2018, at the close of Sandoval's

2

evidence, Unum moved for judgment as a matter of law under Rule 50(a), and the Court took the motion under advisement. (ECF No. 102 at 2.) Unum renewed its motion at the close of its own presentation of evidence. (*Id.* at 3.) The Court then heard argument, and denied Unum's Rule 50(a) Motion.

In its Rule 50(b) Motion, Unum argues, as it did in the Rule 50(a) Motion, that Sandoval failed to meet the Policy definition for disability because she was working as a cosmetologist and that Sandoval was not under the regular care of a physician after October 10, 2016. (ECF No. 137 at 1.) The Court will address each argument in turn.

**A.** **Was Sandoval Working in an Occupation as a Cosmetologist?**

Under the Policy, for the first two years, Sandoval would be considered disabled if she met the following criteria "due to [her] sickness or injury":

> 1. You are unable to perform the material and substantial duties of your regular occupation and are not working in your regular occupation or any other occupation
>
> or
>
> 2. You are unable to perform one or more of the material and substantial duties of your regular occupation, and you have a 20% or more loss in your indexed monthly earnings while working in your regular occupation or in any occupation.

(ECF No. 137-1 at 15.)

Unum does not dispute that Sandoval was "unable to perform the material and substantial duties of [her] regular occupation." Rather, it argues that the evidence undisputedly shows that she was working in another occupation, namely, as a cosmetologist out of her own home. At trial, Sandoval indeed testified that after her

surgeries, she continued to provide styling services for less than ten individuals. (ECF No. 127 at 98.) Sandoval also testified that she renewed her cosmetology license in May 2018 because she had worked for the certification and did not want to let it lapse. (*Id.* at 99, 102.) However, Sandoval also testified that she provided limited services (cutting hair only, but not styling) to a small group of friends as a form of a social outlet for her, and that the services she provided were much abbreviated. (*Id.* at 52–53.) Her husband also testified that Sandoval occasionally still does hair for five or six people as "more of a social thing," for approximately one or two hours a month. (*Id.* at 11–12.) He also testified that it is not a "moneymaking thing" and that she in fact lost money by doing it. (*Id.* at 12–13.)

Unum emphasizes that, had Sandoval's intentions been purely social, she could have invited customers to her house to socialize or visited them. Instead, in Unum's words "she kept her salon open, incurred expenses for product, and charged her customers for her time and services." (ECF No. 137 at 4.) While this is certainly one conclusion that a reasonable jury could draw, it is not the *only* reasonable conclusion based on the evidence.

Citing cases from the Tenth Circuit and the District of Massachusetts, Unum also argues that even if Sandoval lost money in her efforts as a cosmetologist, she was still working in an occupation. However, the referenced Tenth Circuit case merely states that medical providers had concluded that the plaintiff in that case was able to work and "fit for multiple gainful occupations." *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1194 (10th Cir. 2009). But *Holcomb* did not squarely address the more critical

4

question presented here: whether the plaintiff was actually working in an occupation or earning money.

The other case cited by Unum on this point is also easily distinguishable from the present circumstances. *Gillespie v. Allianz Life Ins. Co. of N. Am.*, 2004 WL 2660636, at *1 (D. Mass. Nov. 18, 2004). In that case, the court found that a plaintiff who had ceased work as a chiropractor but took subsequent jobs as a security guard, substitute teacher, "Ed. Tech.", and insurance salesman was not totally disabled because "these jobs were of a substantial and not merely trifling character. . . [and] the disability policy protected job *income*, not *status*." *Id.* at *2 (internal quotation marks and citation omitted) (emphasis in original). Here, the Court finds that there is more than sufficient evidence in the record from which a reasonable jury could conclude that Sandoval's decision to continue, on a very limited basis, to cut hair for a few of her friends was in fact not "substantial", but rather of a "merely trifling character"—one that not only failed to provide her with any income, but as a result of which she actually lost money.

Viewing the totality of the evidence, and taking drawing all reasonable inferences in favor of Sandoval (as the Court must on a Rule 50 motion), the Court finds there are sufficient facts from which a reasonable jury could conclude that Sandoval's limited cosmetology efforts were not work in "any other occupation," but rather a hobby or social activity, and a very limited one at that. *See Wagner*, 586 F.3d at 1244.

For the sake of completeness, the Court will briefly address an argument raised by Sandoval for the first time in response to Unum's Rule 50(b) Motion, namely that Sandoval satisfied the second prong of the Policy's disability definition, which considers an individual disabled if she is unable to perform a part of her regular occupation and

5

has "a 20% or more loss in . . . indexed monthly earnings while working . . . in any occupation."[1] As Unum rightly observes, Sandoval did not raise this argument at trial. (ECF No. 153 at 2, 4.) Even if not emphasized or argued by Sandoval (or Unum), the jury was presented with the relevant information that would have allowed it to conclude that Sandoval was disabled under the second prong of the Policy.

The second prong of the definition of disability seemingly tracks the Policy's definition of "gainful occupation"—"an occupation that is or can be expected to provide you with an income at least equal to 80% of your indexed monthly earnings within 12 months of your return to work"—suggesting that a person is "disabled" if she is not working in a gainful occupation. (ECF No. 137-1 at 34.) As noted above, Unum does not dispute that Sandoval was "unable to perform the material and substantial duties of [her] regular occupation," and thus it is reasonable to infer that Unum does not dispute that Sandoval was unable to perform "one or more of the material and substantial duties of [her] regular occupation."

In addition, the evidence that went to the jury included Sandoval's annual salary of approximately $47,000, or monthly earnings of $3,916.67, as a Training Supervisor for the Douglas County Motor Vehicle Department. (Def. Trial Ex. A at 134–135, 157; *id.* at 190 (70% of Sandoval's monthly income prior to disability amounts to

---

[1] Unum argues in its reply brief that the second prong relates to "partial disability" and that Sandoval "misleadingly fails to explain the difference between" total and partial disability. (ECF No. 153 at 2.) However, the Policy itself does not explain the difference between total and partial disability under this definition, or how disability benefits would vary based on the level of an individual's disability. While it may be Unum's internal practice to distinguish between total and partial disability based on the Policy's definition, this distinction is hardly evident on the face of the Policy. As such, the Court can only conclude that "disability" under either prong of the definition means "disability," and the Court will not draw a distinction between total and partial disability based on Unum's arguments first raised in its reply brief.

$2,741.67).)² The evidence before the jury also included Sandoval's monthly gross earnings from hair cutting, which ranged between $89 and $290 per month. (*Id.* at 197–98.) The jury also heard testimony that the gross payments for cosmetology services undertaken by Sandoval did not even cover her expenses resulting, as discussed above, in what amounted to a social hobby of Sandoval from which she actually lost money. (ECF No. 127 at 12–13.) On top of this, Sandoval testified that she is unable to blow dry hair or see more than two customers per day because of her resulting pain. (ECF No. 127 at 52, 55–59.)

Drawing all reasonable inferences in favor of Sandoval, the Court finds the jury could have reasonably concluded that, even if Sandoval was working in an occupation, she had a 20% or more loss in her monthly earnings. Indeed, Unum's argument that Sandoval has an occupation in which she lost money further supports a reasonable conclusion that she had more than a 20% drop in monthly earnings. Given the evidence presented to the jury, it could have reasonably concluded that Sandoval was disabled under the second prong of the Policy's definition of disability.

The Court thus concludes that there was sufficient evidence from which a reasonable jury could conclude that Sandoval met the Policy's definition of disability, and denies Unum's Rule 50(b) Motion as to that argument.

---

² The Court notes that Sandoval's response brief cites certain testimony that was not provided to the jury. Sandoval cannot rely on such information at the Rule 50(b) stage. The Court therefore relies only on the pages admitted from Defendant's Exhibit A. (*See* ECF No. 105 at 2.) The Court presumes that Sandoval's inclusion of evidence that did not go to the jury was an oversight on the part of Sandoval's counsel, rather than an intentionally misleading representation to the Court. It is expected that counsel will be more careful in its statements and arguments to the Court in the future.

**B.     Was Sandoval Under the Regular Care of a Physician?**

The Policy also required Sandoval to be "under the regular care of a physician in order to be considered disabled." (ECF No. 137-1 at 15.) The Policy defines regular care to mean:

- you personally visit a physician as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and
- you are receiving the most appropriate treatment and care which confirms with generally accepted medical standards . . . .

(ECF No. 137-1 at 36.) At trial, the parties introduced evidence regarding whether Sandoval was under "regular care" of Dr. John Barker.

Unum contends that after October 10, 2016, Sandoval was no longer under the regular care of Dr. Barker.[3] In support, Unum argues that "regular care" requires "more than merely being a patient of a physician." (ECF No. 137 at 5.) At trial, Dr. Barker testified that after October 10, 2016 (one year after Sandoval's surgery), he did not schedule any further visits with Sandoval and classified her as "PRN . . . meaning come back when needed." (ECF No. 128 at 115.) At that point, Dr. Barker testified that Sandoval was no longer under his "scheduled care." (*Id.*) When questioned whether "scheduled care" differed from "regular care," Dr. Barker responded: "I don't know what regular care means. I mean, as you already pointed out, she didn't have a scheduled follow-up appointment. They're always under my care. I didn't just discharge her as a

---

[3] Unum concedes that Dr. Barker provided "regular care" up to October 10, 2016. (ECF No. 137 at 5.) Sandoval's disability benefits were terminated in May 2016. Therefore, given the Court's ruling in Part III.A, a favorable ruling for Unum on this issue would only provide partial relief from the jury verdict.

patient." (*Id.* at 116.) Unum's counsel then summarized Dr. Barker's testimony: "[S]he was no longer under the regular care, but a patient that could come back and see you if she felt she needed to," to which Dr. Barker replied: "correct." (*Id.* at 116.)

To prevail on its Rule 50(b) Motion, Unum must demonstrate that the only conclusion a reasonable jury could draw is that Sandoval was not under Dr. Barker's regular care. *See Hinds*, 988 F.2d at 1045. However, reviewing Dr. Barker's testimony, that proposed conclusion is but one of multiple conclusions that the jury could draw. A reasonable jury could also have concluded that being able to return to a providing physician when needed was, at that point in Sandoval's post-surgical life, "as frequently as is medically required," and "the most appropriate treatment and care." Dr. Barker testified that he did not "discharge her as a patient" but rather continued to maintain a physician-patient relationship with Sandoval after October 2016, exercised on an as-needed basis to manage her condition. (ECF No. 128 at 116.) Thus, the jury could have reasonably concluded based on the evidence that Sandoval remained under the regular care of Dr. Barker during the pertinent time period. The Court thus denies Unum's Rule 50(b) Motion as to its regular care argument.

**C.     Motion to Stay**

Unum moves for a stay of proceedings to enforce the judgment pursuant to Rule 62(b) and approve Unum's proposed supersedeas bond. (ECF No. 147.) Sandoval does not object. (ECF No. 152.) The Court has independently reviewed Unum's Motion to Stay, and is satisfied that a stay would serve the purpose of Rule 62, namely "to preserve the status quo while protecting the prevailing party's interest in the

judgment." *Romero v. Helmerich & Payne Int'l Drilling Co.*, 2017 WL 5900361, at *8 (D. Colo. Nov. 30, 2017). Unum has offered a bond in total amount of $180,747.39, comprised of the final judgment plus twenty-five percent, two years of post-judgment interest at a 2.59% rate compounded annually, 24 months of benefits for Plaintiff under the Policy, and Plaintiff's requested costs. This amount is sufficient for the purpose of staying enforcement of the judgment under Rule 62.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Renewed Motion for Judgment as a Matter of Law under Rule 50(b) (ECF No. 137) is DENIED;

2. Defendant's "Motion to Stay Enforcement of Judgment, Approval of Supersedeas Bond and Request for Expedited Briefing" (ECF No. 147) is GRANTED;

3. Enforcement of this Court's judgment is STAYED under Rule 62 until a mandate is issued by the Tenth Circuit Court of Appeals; and

4. The Court hereby APPROVES Defendant's supersedeas bond submitted by Defendant at ECF No. 150-1.

Dated this 26th day of April, 2019.

BY THE COURT:

William J. Martinez
United States District Judge